UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TYHEEM KEESH; JESUS JOVA,                           9:04-CV-0779
                                                    (NAM/GJD)
                            Plaintiffs,
            vs.

JOSEPH T. SMITH; EVAN GORELICK, et al.,

                            Defendants.
_____

Tyheem Keesh
90-B-0548
Shawangunk Correctional Facility
P.O. Box 700
Wallkill, NY 12589
Plaintiff, *Pro Se*

Jesus Jova
95-A-0425
Shawangunk Correctional Facility
P.O. Box 700
Wallkill, NY 12589
Plaintiff, *Pro Se*

Jeffrey P. Mans
Asst. Attorney General
The Capitol
Albany, New York 12224
Attorney for Defendants

**Hon. Norman A. Mordue, Chief U.S. District Judge**

**MEMORANDUM DECISION and ORDER**

Presently[1] before the court is plaintiffs' "Motion to Vacate" this court's decision granting defendants summary judgment, dismissing this action. (Dkt. No. 130). Defendants have filed a response to plaintiffs' motion, and plaintiffs have filed a reply. (Dkt. Nos. 133, 135). Plaintiffs

---

[1] Plaintiffs also filed a "Motion to Quash" defendants Bill of Costs. (Dkt. No. 131). This court has issued a separate order addressing plaintiffs' Motion to Quash.

have also filed a "Supplemental Affirmation" and a letter in further support of their motion.[2] (Dkt. Nos. 136, 137). For the following reasons, this court agrees with defendants and will deny plaintiffs' motion to vacate.

## DISCUSSION

**1.     <u>Motion to Vacate</u>**

Plaintiffs state that they have made this motion to vacate pursuant to FED. R. CIV. P. 60(a) and (b). (Dkt. No. 130 at 1). In their motion, they make a variety of arguments asking this court to vacate its decision to grant summary judgment in favor of defendants. They claim that this court has misconstrued the facts and misinterpreted the law, that there are additional facts supporting plaintiffs' position, and that the defendants committed fraud or "other misconduct" in presenting their case. Basically, plaintiffs ask this court to reconsider its prior decision.

The court would first point out that Rule 60(a) is reserved for clerical errors and is not relevant to plaintiffs' request. Rule 60(a) is reserved for changes that would "implement the result intended by the court at the time the order was entered." *Rezzonico v. H & R Block, Inc.*, 182 F.2d 144, 150-51 (2d Cir. 1999)(quotation omitted)(distinguishing between Rules 60(a) and (b)), *cert. denied*, 528 U.S. 1189 (2000); *Williams v. Breslin*, 03 Civ. 1848, 2004 U.S. Dist. LEXIS 20991, *7-10 (S.D.N.Y. Oct. 21, 2004)(same). The result intended by this court at the time the order was entered was dismissal of the action. Plaintiffs are not asking for changes that would "implement" the dismissal of the case.

Rather, plaintiffs ask this court to change its decision. Plaintiffs in this case are focusing

---

[2] The court notes that technically, plaintiffs would not have been able to file such piecemeal submissions, however, the court has accepted all plaintiffs' submissions based on the liberality with which *pro se* litigants are treated and in the interests of justice in considering all the information relevant to their motion.

2

upon Rule 60(b) which provides that, upon a motion, made within a reasonable time,[3] a court may *relieve* a party from a final judgment for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect: (2) newly discovered evidence . . . ; (3) fraud . . . misrepresentation, or other misconduct of an adverse party; . . . (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged . . . or (6) any other reason justifying relief from the operation of the judgment.

FED. R. CIV. P. 60(b). Thus, this court has interpreted plaintiffs' motion as one under Rule 60(b). The standards for motions to vacate under Rule 60(b) are very similar to those used for motions to reconsider under local district court rules. *See McAnaney v. Astoria Finance Corp.*, 04-CV-1101, 2008 U.S. Dist. LEXIS 5535, *7-10 (E.D.N.Y. Jan. 25, 2008) (discussing cases).

Relief under Rule 60 is considered "extraordinary judicial relief." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986). For that reason, the standard for granting relief from a final judgment under Rule 60 is very strict, and the motion will generally be denied unless the moving party or parties can show that the court overlooked facts or controlling law that "might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transport, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)(citations omitted). Motions to vacate or to reconsider[4] should not be granted if the moving party or parties seeks only to relitigate an issue that has already been fully considered by the court. *Id.* at 257. The court must be cautious that this type of motion is not used as a substitute for appealing a final judgment. *Commercial Risk Reinsurance Co., Ltd. v. Sec. Ins. Co. of Hartford*, 2007 U.S. Dist. LEXIS 91441 (S.D.N.Y. Dec. 12, 2007); *Morser v. AT & T*

---

[3] The "reasonable time" must be within one year of the final judgment. FED. R. CIV. P. 60(b).

[4] The Local Rules of this district also provide for motions to "reconsider." LOCAL RULES N.D.N.Y. 7.1(g). Plaintiffs have not asked for relief under this section, but the court would note that the same strict standard applies to a motion to reconsider under the court's local rule. *See Drance v. Citigroup*, 05 Civ. 1, 2008 U.S. Dist. LEXIS 15078, *4 (S.D.N.Y. Jan. 31, 2008)(discussing motions to vacate under Rule 60 compared to motions to reconsider under Local Rule 3.6 of the Southern District of New York).

*Information Systems*, 715 F. Supp. 516, 517 (S.D.N.Y. 1989)(citation omitted).

The strict requirements of Rule 60(b) are applicable to *pro se* litigants notwithstanding the liberality that must be afforded to them. *Flaherty v. Hackeling*, 221 F.R.D. 383, 386 (E.D.N.Y. 2004). *Pro se* plaintiffs are not excused from producing highly convincing evidence in support of their motion to vacate a final judgment. *Fetik v. New York Law School*, No. 97 Civ. 7746, 1999 U.S. Dist. LEXIS 9755, *10-11 (S.D.N.Y. June 29, 1999).

**2.    Mistake**

Rule 60(b)(1) allows a motion to vacate based upon "mistake, inadvertence, surprise, or excusable neglect." In their motion, plaintiffs cite to various alleged "mistakes" in fact and in law made by this court in its decision. However, plaintiffs are basically attempting to relitigate issues that have already been decided. As an example, plaintiffs state that the court referred to plaintiff Keesh as the "Creator" in a parenthetical, but that plaintiff Keesh never claimed to be the Creator. (Dkt. No. 130, Pls. Memo of Law at p.3)(citing Dkt. No. 126 at pp. 4-5). Plaintiffs, however, apparently did not read the rest of the pages that they cite. The court begins page 4 of its decision stating that "[a]ccording to plaintiff Keesh, 'Tulukeesh' is the 'Religion of Zee Keesh (the Creator),' and plaintiff identifies himself as the 'Savior and Teacher' of Tulukeesh."

The court would merely point to the letter that plaintiff Keesh wrote to defendants Goord and Smith, attached to the Amended Complaint. AC at ¶ 1 and Ex. 1. (Dkt. No. 26). The letter specifically requests that plaintiff Keesh's birthday be designated as "Savior Day," which is the "birthday of our Savior and Teacher, Tyheem Yefya Keesh." Plaintiff Keesh also states that he is "the one who the Creator has embodied to reveal the sacred and divine message to the world." *Id.* Since plaintiff Keesh defines words for the court, the court must point out that to "embody" means *inter alia* "to give a body to (a spirit): . . . to make concrete and perceptible: . . . to cause to

4

become a body or part of a body: . . . to represent in human or animal form . . . ."[5]

The parenthetical cited by plaintiffs as "error" in this court's decision was a justifiable interpretation of plaintiff Keesh's own statements. In paragraph XI of plaintiff Keesh's 2003 letter, he states that "We do not believe in the taken [sic] of any DOCS programs (i.e. ART, ASAT, RSAT, etc.) as being beneficial or helpful for us. Our Creator (Keesh) is much stronger and Powerful than any program DOCS can offer, therefore, we do not fall victim to weaknesses that cause people to need these programs." AC, Ex. 1 at p.6. While plaintiff Keesh may now claim that he was referring to "Zee" Keesh and not referring to himself in this sentence, the difference would not change this court's decision.

It is still clear that plaintiff Keesh believes himself to be the Savior and Teacher of Tulukeesh. He cannot seriously deny that he has made these representations. Whether he is the "embodiment" of the Creator or the "Savior" through which the Creator speaks, the defendants' interest in not having an inmate dictating the requirements of the religion is obvious. The court also notes that it did not state that plaintiff Keesh set himself up as "God." Rather, the court was stating that the state had a "legitimate security interest in not having one inmate set himself up as "God" or the "Savior." (Dkt. No. 126 at 31). Thus, whatever "mistake" plaintiffs think that the court made,[6] it would not justify reconsideration of its decision.

Plaintiffs now state that they really did not mean that they needed specific foods on specific days and they only needed "similar" foods to those which Mr. Keesh cited in his October

---

[5] This definition is taken from the Merriam-Webster Online Dictionary. http://www.merriam-webster.com/dictionary/embody.

[6] Plaintiffs claim that this was a "concoction" by the defendants in an effort to mislead the court. This llegation by plaintiffs is simply not true. This court's findings in this regard were based on plaintiff Keesh's own writings and were not based on "bare" allegations by defendants.

5

2003 letter to defendants Smith and Goord. Plaintiff Keesh states that he "clarified this matter" in a 2007 affidavit. (Dkt. No. 130, Pls. Memo. at 8). However, plaintiff Keesh's letter stated "[w]e have fixed diets that are to be eaten on certain days which are listed in our Holy Book . . . . These foods, and the days we eat them, are: . . . ." *Id.* There is no indication in this letter that this list was negotiable, and although plaintiff states that he "clarified" this issue in his February 27, 2007 affidavit, a review of the cited portion of his affidavit does not clarify the issue. (Dkt. No. 117).

In any event, even assuming that in 2007 (three years after their complaint was filed and two years after the amended complaint was filed), plaintiffs were trying to state that they had been willing all along to negotiate with defendants and were willing to "forego" legitimate security concerns, this does not change the reasonableness of defendants' actions in 2003 and 2004. Plaintiff Keesh's letter specifically states that "[t]here are ***no alternative ways*** to practice Tulukeesh." AC, Ex. 1 at 6, ¶ XV (emphasis added). Plaintiffs also state that this court did not understand what plaintiffs meant when they stated that they required a "professional" martial arts trainer. However, plaintiffs do not explain this now and did not explain this in their 2003 letter to defendants. AC, Ex. 1 at 5, ¶ VIII(b).

The court will not engage in a discussion of every fact that plaintiffs believe that the court misunderstood or misinterpreted, because as stated above, a motion to vacate is not an avenue to reargue the case as a substitute for an appeal. Plaintiffs take issue with this court's interpretation of the cases cited, but cite to no controlling law that the court overlooked. Again, plaintiffs' claim that the court misunderstood the law or misapplied the law to their case is not the basis for reconsideration.

**4.     Fraud or Misconduct by Defendants**

Plaintiffs allege that the court merely "agreed" with everything that defendants claimed to

6

be a "security concern." (Dkt. No. 130, Pls. Mem. at 13). The court would point out that it did not merely "agree" with all defendants' allegations. First, the law is clear that judgments regarding prison security "are particularly within the province and professional expertise of corrections officials." *Pell v. Procunier*, 417 U.S. 817, 827 (1974). Generally, unless the court determines that officials have exaggerated their response, the court should defer to their judgment. *Id.* Plaintiffs have not shown that the defendants have attempted to mislead or defraud the court in any way. Plaintiffs' disagreement with the statements made by defendants do not necessarily show that there is a disputed issue of "material fact" in this case.

The court would also point out that some of *plaintiffs'* current allegations appear to be disingenuous. Both plaintiffs submit affidavits stating that they were suffering from malnutrition at their depositions and did not understand the proceedings.[7] Keesh Aff. ¶ 12; Jova Aff. ¶ 6. The court is well aware that plaintiffs made this claim prior to their depositions,[8] and on December 6, 2005, Magistrate Judge Di Bianco adjourned the depositions until plaintiffs' health could be examined. (Dkt. No. 65) (Magistrate Judge Di Bianco's Order). Magistrate Judge Di Bianco ordered defendants to file affidavits regarding plaintiffs' health and nutrition.

Interestingly enough, at the time that they claimed they were suffering from serious malnutrition, neither of the plaintiffs were suffering any apparent health problems. A review of both of the plaintiffs' commissary purchases (signed by plaintiffs) showed that Mr. Jova was purchasing substantial amounts of foods that would not have been included in the Tulukeesh vegan diet, including "Chunky Monkey" ice cream; mozzarella cheese; kipper snacks; snickers;

---

[7] Plaintiffs allege that their malnutrition was the reason that they admitted that they did not have any retaliation claims.

[8] (Dkt. No. 64)(Plaintiffs' Affidavit Regarding Depositions).

7

M & M's; and chicken chunks. *See* (Dkt. No. 68, Smith Decl. Ex. E at pp. 17, 23). Although Mr. Keesh appeared to have purchased many items that would have been included in his vegan diet, such as beans, he also purchased "Duplex Creme Cookies, four pounds of sugar; BBQ Chips; and "Shrimp Dry Soup Mix." *Id.* at p.12. Plaintiffs were clearly supplementing their diets with Commissary purchases.

A review of Mr. Jova's medical records, dated Tuesday, December 20, 2005, written by Nurse Administrator C. Wells, showed that Mr. Jova is five feet, six inches tall, weighing 185 pounds, reflecting a 30 pound weight gain since he entered prison in 1995. Smith Aff. ¶ 5 & Ex. C. He was considered "overweight." Plaintiff Jova had not requested any medical intervention since January 29, 2005, at which time he received treatment for an allergic reaction. *Id.*

A review of Mr. Keesh's medical records, also dated December 20, 2005 and authored by Nurse Administrator Wells, showed that he was last seen by the medical unit on August 4, 2005, complaining of a "stiff neck." *Id.* at p.2. Mr. Keesh's height and weight placed him in the "middle" of the normal weight range. Although plaintiff claimed "dairy allergies," this was ruled out by blood testing on April 11, 2005. *Id.* The report does indicate that plaintiff Keesh requested a special diet, but the doctors did not order it because "he did not fit the criteria per lab testing." *Id.* It does not appear that either plaintiff was suffering from malnutrition to the point that he would not have understood the deposition proceedings or would have responded inappropriately to questions due to his "weakened" conditions.

The depositions were held, and there was no indication in the transcript of either deposition that plaintiffs were having trouble understanding or responding to questions. Thus, plaintiffs' belated claim in their motion to vacate that they were suffering from such malnutrition that they did not understand what they were saying at their depositions is disingenuous ***at best*** and

8

certainly does not support a motion to reconsider or to vacate this court's decision. Plaintiffs statements also do not support a claim of misconduct or fraud by defense counsel.

In their memorandum of law, plaintiffs claim that the court "accepted defendants [sic] story" regarding the publication of plaintiff Keesh's book, referring to page 11 of this court's order. (Dkt. No. 130 at 4). Plaintiffs then state that "the claimed evidence was concealed from Plaintiffs in order to keep them from defending against particular allegations and to deprive Plaintiffs of having access to the Court." *Id.* at 4-5. There were only three exhibits in this case that were filed "*in camera.*" Defendants' Ex. G, J, and K. Exhibit G was plaintiff Keesh's book, which the plaintiffs have clearly seen. Exhibits J and K were materials that were confiscated from plaintiffs' cells during searches. Plaintiffs have seen this information as well.

It is unclear what "evidence" plaintiffs are referring to when they state that evidence was kept from them so that they would not be able to "defend" against the summary judgment motion.[9] First, the court would point out that this is the first time that plaintiffs are complaining of this alleged misconduct,[10] and second, the letters that plaintiffs refer to in their current memorandum of law were written to and by plaintiff Keesh. Additionally, the exhibit that the court referred to was ***not*** one of the exhibits that defendants filed "*in camera.*" Thus, plaintiffs have not shown that evidence was ***kept from them*** in order to prevent them from having access to the court.[11] In fact, the court has been quite liberal in accepting anything that plaintiffs have submitted in support of their own motion for summary judgment and in support of this motion to

---

[9] Plaintiffs made a summary judgment motion of their own. (Dkt. No. 112).

[10] Plaintiffs were well aware in February of 2007 that exhibits had been filed "*in camera.*" Defendants erved plaintiffs with the letter that requested both "traditional" filing of certain exhibits and "*in camera*" review of Exhibits G, J, and K. (Dkt. No. 101 - Doc. 17)(Defense counsel's letter to the court dated January 31, 2007).

[11] Plaintiffs filed an *in camera* exhibit of their own. (Dkt. No. 112, Ex. 130).

9

vacate.

5. **New Evidence**

Plaintiffs claim that they have "new evidence" supporting a motion to vacate this court's decision. Plaintiff Keesh states that he is still being deprived of adequate food, and therefore, he had to have surgery on September 21, 2007. While the court certainly sympathizes with plaintiff Keesh's medical condition, this does not constitute new evidence that plaintiffs' religious rights were violated. Plaintiff Keesh argues that defendants' statement that plaintiff could supplement his diet from the Commissary is incorrect because plaintiff could be denied Commissary purchases after being found guilty of misbehavior. (Dkt. No. 136 at ¶ 8). Once again, this is not "new" evidence that would have changed this court's decision. Basically, plaintiffs are asking that this court decide the summary judgment motion for a second time because they claim that the court erred in its decision and misinterpreted the case law. This is not the standard for either a motion to reconsider or a motion to vacate. As stated above, a motion to vacate is *not* a substitute for appeal. Plaintiffs have not met their burden in this case.

**WHEREFORE**, based on the above, it is

**ORDERED** that plaintiffs' motion to vacate this court's decision (Dkt. No. 130) is **DENIED.**

Date: May 29, 2008

_____
Norman A. Mordue
Chief United States District Court Judge

10