UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆

**TYHEEM KEESH; JESUS JOVA,**

                               **Plaintiffs,**

                     **-v-**                                      **9:04-CV-779 (NAM/ATB)**

**JOSEPH T. SMITH, Superintendent, Shawangunk
Correctional Facility; EVAN GORELICK, Deputy
Superintendent of Programs, Shawangunk Correctional
Facility; GLENN S. GOORD, Commissioner, New York
State Dept. of Correctional Services; JOHN H. NUTTALL;
MARK LEONARD; GEORGE PATAKI,**

                               **Defendants.**

◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆

Tyheem Keesh, 90-B-0548
Shawangunk Correctional Facility
P.O. Box 700
Wallkill, New York 12589
Plaintiff *pro Se*
Jesus Jova, 95-A-0425
Shawangunk Correctional Facility
P.O. Box 700
Wallkill, New York 12589
Plaintiff *pro Se*

Eric T. Schneiderman, New York State Attorney General
Richard Lombardo, Esq., Assistant Attorney General
The Capitol
Albany, New York 12224
Attorney for Defendants

**Hon. Norman A. Mordue, Chief U.S. District Judge**:

## MEMORANDUM-DECISION AND ORDER

### BACKGROUND

      Plaintiffs, inmates in the custody of New York State Department of Correctional Services

("DOCS"), bring this *pro se* action stemming from their practice of a religion called Tulukeesh.

The Tulukeesh Holy Book, "Holy Blackness," recognizes plaintiff Tyheem Keesh as the savior

and requires adherence to a number of religious practices.  In their amended complaint (Dkt. No. 26), plaintiffs claim that defendants interfered with the practice of their religion and violated their rights under the United States Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq.*  On September 25, 2007, by Memorandum-Decision and Order (Dkt. No. 126) and Judgment (Dkt. No. 127), this Court granted defendants' motion for summary judgment, denied plaintiffs' motion for summary judgment, and dismissed the action.

On September 28, 2009, the Second Circuit affirmed the judgment with respect to all claims except plaintiffs' claims under RLUIPA.  *Jova v. Smith*, 346 Fed.Appx. 741 (2d Cir. 2009).  In a separate decision, the Second Circuit addressed the RLUIPA claims.  It reversed and remanded with respect to plaintiffs' RLUIPA claim regarding their Tulukeesh dietary requests, and affirmed with respect to all other claims.  *Jova v. Smith*, 582 F.3d 410 (2d Cir. 2009).

Thereafter, this Court gave the parties leave to file renewed motions for summary judgment solely addressing plaintiffs' RLUIPA claim regarding their dietary requests.  Plaintiffs (Dkt. No. 167) and defendants (Dkt. No. 168) have moved for summary judgment.  Upon referral pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.3(c), United States Magistrate Judge Andrew T. Baxter has issued a thorough Report and Recommendation (Dkt. No. 195) recommending that this Court deny plaintiffs' summary judgment motion, grant defendants' summary judgment motion, and dismiss the action.  Plaintiffs object (Dkt. No. 198).  In view of plaintiff's objections, pursuant to 28 U.S.C. § 636(b)(1)(C), this Court conducts a *de novo* review of the issue on remand, *i.e.*, "whether there is a less restrictive substitute (including, but not limited to, an entirely vegetarian diet) for the current religious alternative menu."  As set forth below, on *de novo* review, this Court accepts Magistrate Judge Baxter's excellent Report and

Recommendation and denies plaintiffs' summary judgment motion, grants defendants' summary judgment motion, and dismisses the action.

Also before the Court is plaintiffs' motion (Dkt. No. 193) to vacate the decision and judgment (Dkt. Nos. 125, 126) which denied their first summary judgment motion and granted defendants' first summary judgment motion. As set forth below, this motion is denied.

## PLAINTIFFS' MOTION TO VACATE

Plaintiffs move (Dkt. No. 193) to vacate this Court's September 25, 2007 decision and judgment (Dkt. Nos. 125, 126) denying their first summary judgment motion and granting defendants' first summary judgment motion. As noted, except for the dietary issue under RLUIPA, all aspects of the challenged decision and judgment have been affirmed by the Second Circuit. *See Jova v. Smith*, 582 F.3d at 416-17; 346 Fed.Appx. at 743-44. Accordingly, this Court cannot take further action with respect to any aspect of the decision and judgment except the dietary claim under RLUIPA. In any event, plaintiffs' papers raise no issue that would warrant vacatur. Plaintiffs' motion (Dkt. No. 193) is denied.

## PLAINTIFFS' DIETARY CLAIM UNDER RLUIPA

In pertinent part, RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). The Second Circuit explains RLUIPA as follows:

> As a general matter, the RLUIPA imposes duties on prison officials that exceed those imposed by the First Amendment. RLUIPA protects inmates by providing that a government shall not impose a substantial burden on the

3

> religious exercise of inmates in certain institutions unless the government shows that the burden furthers a compelling governmental interest by the least restrictive means. Where plaintiff adduces evidence sufficient to show that the government practice substantially burdens her religious exercise, the onus shifts to the government to demonstrate that the practice furthers a compelling governmental interest, and that the burden imposed on religion is the least restrictive means of achieving that interest.

*Jova*, 582 F.3d at 415 (citations and internal quotes omitted.)

For purposes of the initial summary judgment motions, defendants did not dispute that plaintiffs were engaged in religious exercise or that DOCS' dietary practices substantially burdened that exercise. Thus, the Second Circuit addressed only whether defendants' conduct served a compelling state interest and was the least restrictive means of furthering that interest. *See id.* That court concluded that defendants' interests were compelling; thus, the determinative issue was whether defendants' practice constituted the least restrictive means of furthering those interests. *See id.* at 415-17.

Regarding plaintiffs' dietary demands, the Second Circuit wrote:

> ... As an initial matter, the record reveals that Plaintiffs' dietary requests are highly detailed, and, to the extent Plaintiffs require specific foods (and portions thereof) on individual days of the week, and that such foods be prepared by Tulukeesh adherents, the district court correctly found that the administrative burden of providing such individualized meals justified the Defendants' refusal to comply with Plaintiffs' demands. There was no less restrictive alternative to these specific requests.
>
> The record also indicates that the Plaintiffs' religion mandated a vegan diet that did not include soybeans or soy-related products with the exception of soy milk. The district court concluded that the Defendants had provided the least restrictive alternative by offering the Plaintiffs the religious/meatless alternative entree at lunch and dinner and allowing them to supplement their diet with commissary purchases.
>
> It is unclear to us whether the district court considered whether the Defendants were capable of offering a vegetarian diet to Plaintiffs as the least restrictive means of furthering their administrative and security interests. The record shows that, during the course of a regular week, the religious/meatless

4

> alternative menu offered fish entrees two or three times a week for lunch or dinner. Eggs, cheese, beans, meat substitutes and assorted vegetables made up the balance of the week's alternative menu entrees. Although the record indicates that the Defendants were perfectly capable of providing a vegetarian entree on most days of the week, and may in fact have provided vegan entrees on occasion, there is no indication that the Defendants discussed, let alone demonstrated, why they cannot provide an entirely vegetarian menu to inmates who request it. We therefore conclude that the Defendants did not demonstrate that the religious/meatless alternative menu was the least restrictive means of furthering their compelling administrative interests.
>
> Because the record fails to show that the religious alternative menu provided to the Appellants is the least restrictive means of furthering the Defendants' compelling interests, the district court's grant of summary judgment to the Defendants as to this issue was incorrect. Accordingly, the case is remanded for consideration of whether there is a less restrictive substitute (including, but not limited to, an entirely vegetarian diet) for the current religious alternative menu.

*Id.* at 417 (footnote omitted).

On remand, the parties have moved for summary judgment (Dkt. Nos. 167, 168) on the sole remaining issue of whether the burden imposed on plaintiffs' religious exercise by the religious alternative menu ("RAM") was the least restrictive means of furthering defendants' interests. Magistrate Judge Baxter's Report and Recommendation (Dkt. No. 195) reviews the record and concludes that the RAM is the least restrictive means and that therefore defendants did not violate RLUIPA. In concluding that the RAM is the least restrictive means, Magistrate Judge Baxter relies primarily on the declaration of Elizabeth Culkin, DOCS' Assistant Director of Nutritional Services. The Court refers the reader to Magistrate Judge Baxter's summary and discussion of Ms. Culkin's declaration. In particular, Ms. Culkin explained that the RAM, which offers alternative entrees to every lunch and dinner that contains a meat entree, was devised to meet the needs of inmates with food allergies, those with religious objections to consuming certain foods, and those who are vegetarians. Ms. Culkin stated that DOCS considered offering

5

inmates a completely vegetarian diet (*i.e.*, excluding meat but including other animal products such as eggs and dairy), but decided against it, in order to accommodate the needs of other inmates. She also spelled out the obstacles to serving a second alternative entree at meals where the alternative entree is fish or chicken.

Further, as Magistrate Judge Baxter observes, Ms. Culkin explained that providing a completely vegan alternative menu would impose a substantial financial and administrative burden on DOCS. A vegan diet prohibits the consumption of eggs, dairy, and other animal products; thus, offering a vegan diet would require offering alternative breakfasts, side dishes, and desserts, in addition to the alternative lunch and dinner entrees offered by the RAM. She added: "It is obvious that fully accommodating the dietary preferences of each of the approximately 55,000 general confinement inmates in this State would pose an unreasonable financial burden on the taxpayers and an impossible administrative burden on DOCS."

Magistrate Judge Baxter concludes that "defendants have shown that their religious alternative entree is the least restrictive means of furthering their compelling administrative interests." He adds that "there is no less restrictive means because defendants have shown that it is financially and administratively impossible to offer a completely vegetarian or vegan meal, particularly considering the problem created by plaintiffs' unwavering demand for a completely vegan diet (without soybeans)." [1] He further finds that defendants were not personally involved

---

[1]

In explaining the Keesh diet, plaintiffs' summary judgment Memorandum of Law on remand states:

> According to Holy Blackness, Tulukeesh adherents have a prescribed diet for each day of the week. For instance:
> > On Sundays your diet should consist of foods as, brown rice, corn, Black beans, onions, cashew nuts, sunflower seeds, plantains, pineapples, garlic, olive oil and hot peppers.

(continued...)

in denying plaintiffs' menu choices, and that in any event, they would be entitled to qualified immunity with respect to damages in their individual capacities. The Court accepts the Report and Recommendation and adds a few observations in light of plaintiffs' objection.

Reading plaintiffs' objection and other submissions liberally and in the light most favorable to plaintiffs, and accepting the truth of all their factual assertions, the Court finds on *de novo* review that there is no RLUIPA violation as a matter of law. The Second Circuit held that there was no less restrictive alternative to the specific requests of the Tulukeesh diet, but remanded on the issue of whether there was a less restrictive substitute (including, but not limited

---

[1](...continued)
> On Mondays your diet should consist of foods as, brown rice, navy beans, carrots, green peppers, sweet potatoes, honey, cinnamon, lettuce, tomatoes, cucumbers and strawberries.
> On Tuesdays your diet should consist of foods as, walnuts, broccoli, peas, Blackbeans, onions, tomatoes, garlic, sunflower seeds, brown rice and cherries.
> On Wednesdays your diet should consist of foods as, navy beans, carrots, celery, green peppers, sweet potatoes, honey, cinnamon, oats, spinach, chic peas and brown rice.
> On Thursdays your diet should consist of foods as, pasta, tomato sauce, garlic, green peppers, hot peppers, raisins, olives, kidney beans, string beans, lettuce, tomatoes, cucumbers and pistachio nuts.
> On Fridays your diet should consist of foods as, brown rice, almond nuts, kidney beans, chic peas, onions, hot peppers, tomato sauce, garlic, cabbage and potatoes fried in olive oil.
> On Saturdays your diet should consist of foods as, brown rice, Blackeye peas, sweet potatoes, collard greens, pumpkin seeds, broccoli, cabbage, oranges, carrots, Blackberries and bananas.

In addition, on fast and feast days the diet is different. For instance, fasting is during the appearance of sun light hours, thereafter the eating of food is optional, and a feast is held at the completion of the fast. The key about this diet is, it is flexible, enabling the defendants to easily accommodate it. For each day of the week the word "as" is set forth, expressing that the food does not have to be exact, but can be similar.

Holy Blackness also reminds Tulukeesh adherents: to eat an animal-free (vegan) diet; eat navy beans at least four times out of the week; those under some form of institutional confinement are to abstain from eating soybean served within institutions; and avoid a saturated fat diet, refined foods (e.g., white sugar and white flour), but eat natural foods (e.g., unrefined brown sugar, whole wheat flour and antioxidant tea [Black tea, etc.]).

(Citations to "Holy Blackness" chapters and verses omitted.)

7

to, an entirely vegetarian diet) for the RAM. In considering this question, the Court notes that plaintiffs' recent submissions again make clear their position that only a vegan diet will meet the requirements of Tulukeesh. They find a vegetarian diet to be wholly unacceptable because it contains animal products.[2] Nor is there evidence that any other substitute for a vegan diet would be acceptable to plaintiffs, or that one type of non-vegan diet would be more acceptable than another.[3] Rather, all non-vegan diets, including a vegetarian diet and the RAM, are completely unacceptable, and thus all are equally restrictive under RLUIPA. Defendants have, however, demonstrated that offering a vegan alternative diet is not possible within the constraints of DOCS' compelling interests.[4] As such, there is no alternative diet consistent with DOCS' compelling interests that, from the plaintiffs' point of view, would be less restrictive than the RAM. Certainly RLUIPA does not require DOCS to engage in the pointless exercise of offering

---

[2] In his affirmation (Dkt. No. 191) in reply to defendants' opposition to his summary judgment motion on remand, plaintiff Keesh appears to indicate he would accept an "entirely vegetarian" diet. However, he cites to a definition of a "vegetarian" which is essentially the same as a "vegan," *i.e.*, a person who "believes that plants afford the only proper food for man" and who eats "no butter, eggs, or milk." (Dkt. No. 191, p.1, n.1.) Keesh equates this "entirely vegetarian diet" with the Tulukeesh diet, again demonstrating that he means a vegan diet. In any event, if in fact Tulukeesh adherents would accept what is generally understood as a vegetarian diet (*i.e.*, excluding meat but including other animal products such as eggs and dairy), the Court finds, as discussed below, that the RAM would satisfy their dietary needs, in which case their religious exercise is not burdened.

[3] Despite plaintiffs' occasional use of words such as "flexibility" and "compromise," all of their specific requests and suggestions require either that defendants offer them a vegan alternative diet or that all inmates be given vegan food. For example, in their objection to the Report and Recommendation, plaintiffs refer to a proposed "compromise" set forth in plaintiff Keesh's October 14, 2003 letter to defendant Superintendent Smith; this proposal was that at one time each day DOCS give plaintiffs all their Tulukeesh-compliant food for the day, which "can be consumed throughout the day as [plaintiffs] choose." The objection also refers to a proposed "compromise" "that included a total soy diet."

[4] As noted, Ms. Culkins's declaration establishes that offering a vegan alternative diet is not possible within DOCS' budgetary and administrative constraints. Because a vegan diet prohibits the consumption of eggs, dairy, and other animal products, offering a vegan diet would require offering alternative breakfasts, side dishes, and desserts, in addition to the alternative lunch and dinner entrees offered by the RAM.

plaintiffs an alternative diet – vegetarian or otherwise – that they would find no less restrictive in its impact on their religious exercise than the RAM. Since there is no feasible diet that plaintiffs view as less restrictive under Tulukeesh than the RAM, defendants have not failed to offer plaintiffs the least restrictive alternative, and there is no RLUIPA violation.

In the event, however, that plaintiffs would find a completely vegetarian diet to be less restrictive under Tulukeesh than a diet that includes meat, defendants have shown that they are in compliance with RLUIPA, because the RAM meets the dietary needs of vegetarians. As Ms. Culkin states, all but two meals per week are meatless or offer an alternative meatless entree. Regarding the two weekly meals in which the alternative entree contains meat (typically chicken or fish), she states:

> Once it was determined that approximately two meals per week would not include a meatless entree, the Office of Nutritional Services was careful to ensure that the lunches and dinners that included an alternative entree of fish or chicken would also include side dishes, dessert, and beverage so that an inmate who chooses not to eat either the main or alternative entree would still have enough food and receive a nutritionally adequate diet.

Since the RAM provides a sufficient, nutritionally adequate diet to vegetarians, the RAM would not impose a substantial burden on plaintiffs' religious exercise in the event that they would find a vegetarian diet less restrictive than a diet that includes meat. In that case, RLUIPA would not require defendants to offer plaintiffs a less restrictive alternative diet. Moreover, defendants have demonstrated that the RAM is the least restrictive means of furthering the compelling governmental interest in providing a nutritionally adequate daily diet for 55,000 inmates within DOCS' administrative and financial constraints.[5] In designing the RAM, the Office of Nutritional

---

[5] RLUIPA does not require defendants to ignore financial and administrative constraints. The Supreme
(continued...)

9

Services took into account not only the requirements of inmates who, for whatever reason, are vegetarians, but also the requirements of inmates with food allergies and inmates with religious objections to eating certain foods.[6]  Defendants have demonstrated that the RAM would satisfy RLUIPA, if in fact plaintiffs' religious tenets would find a vegetarian diet less restrictive than a diet that includes meat.

To conclude, the Court finds that there is no RLUIPA violation as a matter of law.  Given plaintiffs' insistence on a vegan diet, there is no diet consistent with defendants' administrative and security interests that would be less restrictive to them than the RAM; thus, defendants have not failed to offer the least restrictive alternative.  Moreover, in the event that plaintiffs would find a vegetarian diet less restrictive under Tulukeesh than a diet that includes meat, the RAM meets the dietary needs of vegetarians and thus does not burden their religious exercise.  In addition, defendants have demonstrated that the RAM is the least restrictive means of furthering DOCS' compelling governmental interests.  Defendants are entitled to summary judgment dismissing plaintiffs' RLUIPA claims with respect to their religious dietary requirements.

## CONCLUSION

It is therefore

ORDERED that plaintiffs' motion (Dkt. No. 193) to vacate the decision and judgment

---

[5](...continued)
Court has stated that, in enacting RLUIPA, Congress "anticipated that courts would apply the Act's standard with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources."  *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005) (emphasis added, citation and internal quotation marks omitted).

[6]
For example, Ms. Culkin stated, "including a chicken patty as an alternative entree accommodates the requests made by Muslim inmates for Halal meats."

(Dkt. Nos. 125, 126) denying their first summary judgment motion and granting defendants' first summary judgment motion is denied; and it is further

ORDERED that the Report and Recommendation of United States Magistrate Judge Andrew T. Baxter (Dkt. No. 195) is accepted; and it is further

ORDERED that plaintiffs' motion for summary judgment (Dkt. No. 167) is denied; and it is further

ORDERED that defendants' motion for summary judgment (Dkt. No. 168) is granted and the action is dismissed with prejudice.

IT IS SO ORDERED.

Date: March 25, 2011

Norman A. Mordue
Chief United States District Court Judge